### HANGER *v.* IVES.

Opinion delivered January 19, 1901.

ATTACHMENT—AMENDMENT.—An affidavit for a general attachment will not be treated on appeal as amended to conform to proof of an existing ground for specific attachment. (Page 55.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

*J. M. Moore* and *W. B. Smith,* for appellant.

One may grant either the fee or merely an easement in regard to quarry privileges. 2 Washb. Real Prop. 400, 403; 1 *id.* 19; 3 *id.* 416-7. Conveyance of quarry rights is not a sale of stone, since it carries with it also the right of ingress and egress for quarrying. Attachment is a proceeding in derogation of common law, and the statute is to be strictly construed. Wap. Att. § 23. A writ of general attachment cannot issue without proper affidavit stating grounds of attachment. 30 Ark. 361; 28 Ark. 469; Drake, Attach. §§ 115, 116.

*Marshall & Coffman,* for appellee.

The sale of the right to quarry the stone conveyed only an easement. 2 B. & A. 724, 738; 15 Am. & Eng. Enc. Law. 509; 2 Wall. Jr. 81; 49 Pa. St. 341; 29 *id.* 241; 57 *id.* 446; 81 Va. 764; 72 Pa. St. 173; 53 Pa. St. 229, 243; 55 Pa. St. 16, 504; 61 Pa. St. 39; 18 L. R. A. 491; 3 S. C. 168; 63 Ark. 10. The affidavit could be amended at any time, and, if not expressly amended, would have been considered as amended to conform to the proof.

55 Ark. 329; 4 U. S. App. 603; 47 Ark. 31; 62 Ark. 171; 63 Ark. 157; S. C. 35 L. R. A. 765, 766; 31 *Id.* 422; 61 Am. Dec. 124.

BUNN, C. J. This is a suit by Charles Ives against Fred Hanger for $800, the price of 10,000 cubic yards of stone, instituted and tried in the second division of the Pulaski circuit court on the 21st day of September, 1898. Judgment for the plaintiff in the sum of $350, and the defendant appealed.

The suit grows out of the following state of facts: On the 3d day of November, 1892, the plaintiff, Ives, being the owner of the fractional northeast quarter of section 1, township 2, north of range 14 west, executed to one F. J. H. Rickon a deed conveying to him all the quarry rights in and to said fractional quarter section, which rights consisted of the exclusive right to quarry and remove from said land all stone in or on the same, with the right of egress and ingress. The consideration for said sale was a small amount paid in cash, and the further sum of eight (8) cents per cubic yard, to be paid for all rock taken from said lands. Subsequently, on the 14th day of August, 1894, the defendant, Fred Hanger, purchased said quarry rights upon the same terms from Rickon. Claiming that Hanger, beginning from about the 1st December, 1896, had up to the time of the institution of this suit taken out 10,000 cubic yards of stone, plaintiff brought the suit to recover the price of the same, no part of which he claimed had ever been paid.

In his answer and counterclaim, the defendant denied that he was indebted to plaintiff as claimed, and denied that he had taken out 10,000 cubic yards of stone in the time named, and that he was indebted to the plaintiff for the same. He admitted that he had taken out about 6,000 cubic yards of rock, but denied that plaintiff was entitled to a royalty of eight cents per cubic yard for said rock, under the terms of the contract or the deed set out in his complaint, and by way of counterclaim defendant alleged that plaintiff, on the 25th day of March, 1896, without filing the affidavit required by law, instituted an attachment proceeding against him, before William Gardner, a justice of the peace for Roland township, Pulaski county, for the sum of $64, which he claimed to be owing and due from defendant to him, for the price of 800 cubic yards of stone, at the contract price, which he claimed defendant removed from said land up to that time, and had not paid for, the same being a portion of the

stone sued for in this action. The defendant alleges further
that plaintiff caused said justice of the peace to issue and place
in the hands of the constable of said township an order of attach-
ment, and caused the same to be executed by said constable by
levying the same upon a quantity of quarried stone which defend-
ant had got out and loaded on barges in the Arkansas river moored
at a convenient place to said lands and quarry; that the plaintiff
with the constable warned and threatened defendant's hands and
employees then engaged not to further prosecute the work of quarry-
ing and removing stone therefrom, and thus prevented defendant
from quarrying and removing the stone from said quarry; that
the levying of said order of attachment, and the conduct and acts
of plaintiff in relation thereto, and in connection therewith, caused
the work of defendant in getting out and removing and loading
stone on boats as aforesaid to be suspended, demoralized the de-
fendant's laborers, and caused them to abandon the work, and
prevented his free egress and ingress from or to said lands for
the purpose of carrying out his contract; and that said attachment
was unlawfully issued. Then follows a statement of defendant's
contract with the United States government, which he was pre-
vented from fulfilling, except at great and ruinous costs, by reason
of the levy of said attachment and the demoralization of his
laborers as aforesaid.

There was no affidavit for the attachment issued, nor was there
any bond given as the law requires. The order of attachment was
in form that used for a general attachment.

On the trial of this cause, the defendant asked the following
to be given, which the court refused to give:

"1. The jury are instructed: If you find from the evidence
that the affidavit by the plaintiff, at the time he procured an attach-
ment from Walter Gardner, justice of the peace, against the defend-
ant, was insufficient in this, that it did not state a ground for
an attachment, or if you find no attachment bond was filed as
required by law, then said attachment proceeding was wrongfully
instituted, and any levy made by the constable thereunder was a
wrongful and unauthorized levy."

On its own motion, the court gave the following: "Now,
under this section (section 4728 of the digest) if Hanger owed Ives
for stone quarried out and ready for delivery, and here the burden
is on Ives, it was personal property in the hands of the vendee,
Hanger, and on which plaintiff Ives had a right, if he still owed for

it, to sue out an attachment before a justice of the peace and have the same levied on this particular property, and on this proceeding no bond is required to be filed. And if you find from the evidence that Hanger owed Ives for the stone, and if you further find that, in suing out such attachment process and having it levied upon this rock, Ives substantially complied with the statute, there would be no liability to Hanger merely by reason of any informality in such process."

The attachment sued out before the justice of the peace was in form a general attachment. At least, we must so conclude since the order issued by the justice of the peace was that of a general attachment, and it ran against all of the property of the defendant in the county, subject to execution. Plaintiff, Ives, was informed of the dissolution of the attachment beforehand, and never appeared in the justice of the peace court on the return day, or at any time, and sought to amend or change the proceeding in any manner, but seemed to have acquiesced in the dissolution of the attachment, on the ground upon which he had learned that it had been dissolved, that is, because, the title to real estate being involved, the justice of the peace had no jurisdiction of the cause. The order of attachment, its levy and the attendant circumstances constituted the injury from which the defendant, in his counterclaim, claims that he suffered damages. The said instruction given on the court's own motion is a mere construction of the section of the digest referred to therein, and, abstractly considered, and in a proper case, would be sound, but the real contention of the defendant is that plaintiff in said attachment proceeding had not in any material sense complied with the law, and his contention is sustained by the facts, if considered either as a general attachment, or if we consider it as a vendor's attachment which the plaintiff might have had a right to claim at the time. There was also no compliance with the statute which provides for an attachment without bond on personal property for the purchase money. In such proceeding an affidavit must be filed, setting forth the specific property, and its value, etc., and the order must direct the sheriff to take and hold the property subject to the further order of the court.

But the trial court evidently proceeded on the theory that the affidavit in attachment might be considered amended to suit the evidence, and the trial might thus proceed. On this question this court said in *Blass* v. *Lee,* 55 Ark. 332 (referring to the dif-

ferent grounds of attachment named in the statute regulating general attachments) : "This was itself a ground of attachment. But it was separate and distinct from that stated in the plaintiff's affidavit, and did not authorize the court to sustain the attachment, unless the affidavit had been amended so as to embrace it. The statute expressly provides that the affidavit may be amended so as to embrace any grounds that exist up to the final judgment upon the attachment. But it also provides that if the amendment 'embrace new grounds not existing at the time of suing out the original attachment, and the attachment shall be sustained on such new grounds only, the lien shall exist on the property levied upon from the filing of the same.' This language seems to indicate that the statute does not authorize the court to sustain an attachment upon any ground not presented by the original affidavit or by an amendment thereto. In this case there was no offer to amend, and it cannot be said that the court erred in not directing the amendment upon its own motion. It is not contended that the original ground of attachment was treated as amended on the trial, and to so regard it here would be to determine the appeal on an issue not made in the court below. It follows that the judgment discharging the attachment should be affirmed.

The rule by which courts are permitted to render judgments on implied amendment has really no justification, except on the theory that all parties have treated the original assignment of cause of action as amended by the introduction of testimony in support of the amendment on the one hand, the same to be done on the other without objection. If the evidence is closed, and for the first time the doctrine is relied upon in instructions to the jury, there is generally a surprise to the party who has not directed his evidence to this point, and the doctrine therefore should be invoked with caution, if at all.

There were peculiar circumstances in *Blass* v. *Lee*, as we have seen, which made the rule inapplicable, and yet that was an implied amendment, which might well have been actually made under the same statute that authorized the action and the attachment therein. The peculiarity of the case at bar is that there is nothing but the order of the justice of the peace's attachment to indicate to us the nature of his proceeding. The cause had been dismissed, and the order of attachment consequently dissolved by the justice, on a ground deemed sufficient by him, and no amendment or change

of the proceeding was ever at any time offered to be made, or any renewal of the controversy ever in any manner made before him.

In the trial of the case at bar, the instructions of the court, to which we have made reference, were tantamount to saying to the jury that the justice of the peace in the attachment suit should have treated the affidavit as amended, and proceeded accordingly. There was nothing for the justice to amend to, there had been no affidavit upon which the order of attachment was founded. The levy of the writ and the manner of doing it had done the injury complained of, and we cannot give our assent to an extension of the rule of implied amendments so as to act upon such in a different court and in an independent proceeding, for the reason, if none other, that we have no power to control the judicial discretion of that other court, and say that it should have done the one thing or the other different from the showing of the record, and because, under such circumstances, we cannot know that the plaintiff himself, under the circumstances existing at the time of the pendency of the former proceeding, could have or would have made the amendment, had he been called upon to do so, for such amendment involved different facts from those shown in that record.

The judgment is therefore reversed, and the cause remanded.